# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **HAZELL BROOKS**, *et al.*, |
| Plaintiffs, |
| v. |
| **DISTRICT OF COLUMBIA**, |
| Defendant. |

Case No. 18-cv-0732 (CRC)

## MEMORANDUM OPINION

Three blind vending-facility operators challenge the District of Columbia's inspections of their establishments and calculation of their income under a federal program that gives preferences to visually impaired vendors. Although Plaintiffs frame their challenge under various anti-discrimination statutes, the substance of their complaints concerns the District's administration of the program. As a result, they were required to litigate their claims through local administrative processes before filing suit in federal court, which they did not do. The Court therefore must dismiss the case.

### I. Background

Congress enacted the Randolph-Sheppard Act ("RSA" or "Act") in 1936 to provide employment opportunities to individuals with vision impairments. 20 U.S.C. § 107(a). The Act gives licensed blind persons priority to operate vending facilities located on federal property. Id. § 107(b). It also entitles them to a percentage of all income generated by vending machines located on that property, even if those machines are not operated by program participants. Id. § 107d-3.

Participating states (including the District of Columbia) and the federal government share responsibility for administering the Act. The Secretary of Education interprets and enforces the

Act and designates a state licensing agency ("SLA") to administer the Act within each participating state.  Id. § 107a(a).  In the District of Columbia, that agency is the Department on Disability Services, Rehabilitation Services Administration ("DDS-RSA").  Each SLA manages the day-to-day operations of the RSA in its state by, among other things, licensing individual vendors, identifying locations for facilities, and monitoring compliance with the program's rules and regulations.  20 U.S.C. § 107a(b).

Plaintiffs Hazell Brooks, Derwin Patten, and Roy Patten are current or past participants in the District of Columbia's Randolph Sheppard Vending Facilities Program ("RSVFP" or "Program").  Second Am. Compl., ECF No. 17-1, ("SAC") ¶¶ 3–5.  They allege that they have suffered "ongoing discrimination" based on their blindness arising from the District's administration of the Program, including "discriminatory inspections of blind vendors' facilities," "failure to provide adequate auxiliary aids for blind vendors," and "excessive or unauthorized deductions, set asides, and other such levies and expenses on vending machine" and "vending operations."  Id. at 2.  Plaintiffs assert claims of discrimination under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the District of Columbia Human Rights Act ("DCHRA").  They also bring claims for breach of fiduciary duty, unjust enrichment, and resulting trusts related to the allegedly excessive deductions.

## II.  Legal Standard

The District of Columbia has moved to dismiss the case for failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[1]  When analyzing a motion to dismiss under either Rule 12(b)(1) or

---

[1] Although the D.C. Circuit in 1994 described the RSA's administrative exhaustion requirement as jurisdictional, see Comm. of Blind Vendors of D.C. v. District of Columbia, 28

12(b)(6), the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct." Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). When considering a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## III. Analysis

### A. Mandatory Exhaustion under the Randolph-Sheppard Act

The Randolph-Sheppard Act contains a detailed administrative grievance procedure. A licensee "who is dissatisfied with any action arising from the operation or administration of the vending facility program" is entitled to a "full evidentiary hearing" by the SLA. 20 U.S.C. § 107d-1(a); see also id. § 107b(6) (requiring SLAs to provide "dissatisfied" licensees with "an opportunity for a fair hearing"); 34 C.F.R. § 395.13 (same). To implement these requirements, the District of Columbia provides for an "[i]nformal due process hearing before the D.C. Office of Administrative Hearings (OAH)." D.C. Mun. Reg. tit. 29, § 218.2(b)(3). An aggrieved licensee dissatisfied with the results of the OAH hearing "may appeal . . . either to the D.C. Court of Appeals . . . or to the United States Secretary of Education." Id. § 218.2(c). If the licensee elects the latter, the Secretary submits the complaint to an arbitration panel pursuant to

---

F.3d 130, 133 (D.C. Cir. 1994), two federal courts of appeals more recently have relied on the Supreme Court's "clear statement" rule in Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), to hold that it is not. See Kansas Dep't for Children & Families v. SourceAmerica, 874 F.3d 1226, 1248 (10th Cir. 2017); Kentucky v. United States ex rel. Hagel, 759 F.3d 588, 597–99 (6th Cir. 2014).

20 U.S.C. § 107d-1(a). The panel's decision is considered "final and binding" except as subject to judicial review as a final agency action under the Administrative Procedure Act. Id.; id. § 107d-2(a); 34 C.F.R. § 395.13(c).

The D.C. Circuit has long held that a licensee must exhaust these administrative remedies before seeking judicial review in federal court. Comm. of Blind Vendors of D.C., 28 F.3d at 133–35; Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 102–04 (D.C. Cir. 1986); see also Morris v. Maryland, 908 F.2d 967 (tbl.), 1990 WL 101396, at *3 (4th Cir. 1990); Fillinger v. Cleveland Soc'y for the Blind, 587 F.2d 336, 338 (6th Cir. 1978). Plaintiffs did not do so here. In their complaint, they do not allege that they exhausted the available administrative remedies before turning to this Court.[2] And in their opposition, they note attempts to exhaust by only two of the three named plaintiffs. Opp'n, ECF 21, at 8–9. But even those attempts were insufficient. As explained, Plaintiffs were required to appeal the OAH's determination to either the D.C. Court of Appeals or the Secretary of Education. They neither allege nor assert that they did either. Instead, they filed suit in federal court, which only has jurisdiction to review claims arising out of the administration of the RSA after the arbitration panel convened by the Secretary reaches a decision and only then, under the strictures of the APA.

B. Plaintiffs' Counterarguments

Plaintiffs offer three reasons why the Act's exhaustion requirement does not bar their claims: (1) they do not in fact allege claims under the Randolph-Sheppard Act; (2) D.C. waived

---

[2] The District makes too much of Plaintiffs' allegation that "[t]o date, the class members never litigated the factual and legal problems outlined in this complaint." MTD, ECF No. 19, at 17–18 (quoting SAC ¶ 16(d)). This is not, as it would have the Court believe, a concession about a failure to exhaust. Rather, the Court interprets this statement to mean that Plaintiffs either have not had the opportunity to litigate their statutory claims in court as opposed to before the OAH, or they have not done so as a class.

the Act's exhaustion requirement when it passed the District of Columbia Human Rights Act; and (3) the OAH does not have jurisdiction over RSA claims. None is persuasive.

### 1. *Nature of the claims*

First, it makes no difference that Plaintiffs cloak their claims in terms of discrimination under the ADA, Rehabilitation Act, and DCHRA, because the Court is not bound by the specific labels used in the complaint. A plaintiff cannot circumvent a mandatory exhaustion or other jurisdictional requirements simply by relabeling a claim. See Brown v. Gen. Servs. Admin., 425 U.S. 820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); see also Fresno Cmty. Hosp. & Med. Ctr. v. Azar, No. 18-cv-867-CKK, 2019 WL 1003593, at *6 (D.D.C. Feb. 28, 2019) ("But Plaintiffs' crafty pleading cannot hide the true nature of their claims. Nor can Plaintiffs' clever phrasing be used to avoid a bar on judicial review."). Instead, the Court looks through the form of the complaint to the substance of the allegations to determine the true nature of Plaintiffs' claims. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 477 (1982). To conclude otherwise would be to allow Plaintiffs to avoid the Act's detailed remedial scheme simply by relabeling their dissatisfaction with its administration as discrimination.

Looking beyond labels, the substance of Plaintiffs' allegations demonstrates that they challenge, in three general ways, the District's administration of the RSVFP. Beginning with the most obvious claims, Counts 4 through 6 challenge DDS-RSA's alleged failure to provide specific "auxiliary aids"—such as "human readers[,] automated reading machines," SAC ¶ 42, and "modern electronic magnifiers," id. ¶ 43—to Plaintiffs and other blind vendors. SAC ¶¶ 39–57. Instead, Plaintiffs claim, the SLA provided program participants with important materials in

5

"small print" to ensure they would not be able to read it. Id. ¶¶ 13(e), 40. But, as the District points out, vocational rehabilitation services like the assistive technology Plaintiffs request are specifically addressed in the RSA's implementing regulations, see 34 C.F.R. § 395.11, and D.C.'s municipal regulations governing the RSVFP, see D.C. Mun. Reg. tit. 29, §§ 210.2, 299.1. And although the federal regulation provides that various auxiliary aids "shall be provided to blind individuals as vocational rehabilitation services under the Rehabilitation Act," 34 C.F.R. § 395.11, that reference does not mean that Plaintiffs' cause of action arises under the Rehabilitation Act. Rather, Plaintiffs challenge DDS-RSA's failure to provide various vocational rehabilitation services as *defined* by the Rehabilitation Act but as *required* under the RSA's implementing regulations. That is clearly a challenge concerning the administration of the Program.

Next, Counts 7 through 18 turn on Plaintiffs' broad assertion that the District used "secret mathematical formulas" to "charge[] class members, including plaintiffs, with vending machine deductions, set asides, and other such levies and expenses that the District of Columbia had no right or authority to charge against the account of plaintiffs and other class members." SAC ¶¶ 13(a), (b); see also id. ¶¶ 58–118. But the amount of vending-machine income to which RSVFP participants are entitled is specifically governed by 20 U.S.C. § 107d-3 and its implementing regulation, 34 C.F.R. § 395.8 ("Distribution and use of income from vending machines on Federal property"), as well as D.C. Municipal Regulation title 29, § 204 ("Income from Vending Facilities on Federal Property"). And the amount of funds "set aside . . . from the net proceeds of the operation of the vending facilities" for limited uses like "maintenance and replacement of equipment" and "retirement or pension funds" is specifically governed by 20 U.S.C. § 107b(3). Because Plaintiffs' claims turn on the District's compliance with these

6

provisions, they squarely concern the operation and administration of the program and must be exhausted.[3]

And finally, Counts 1 through 3 challenge the use of "inadequately trained DDS-RSA monitors" rather than "professionally trained Department of Health ["DOH"] credentialed food inspectors" to inspect RSVFP participants' facilities. SAC ¶¶ 12(a), 17–38. According to Plaintiffs, "sighted vendors"—that is, owners of non-RSVFP food establishments—benefit from the professional counseling provided by DOH "credentialed inspectors," while Plaintiffs do not. Id. ¶ 12(b); see also id. ¶ 12(h) ("For years, the District of Columbia, through its [DOH] food inspectors, provided this service for sighted vendors, but not with DDS-RSA disability monitors who inspected the vending facilities of Randolph-Sheppard blind vendors."). These "discriminatory inspections," Plaintiffs assert, lead to a "segregated regime" between blind and sighted vendors. Id. ¶ 12(k).

Plaintiffs' references to a "segregated regime" perhaps give Counts 1 through 3 more of a ring of discrimination that the two sets of claims discussed above. The Court nonetheless concludes that the substance of those counts turns on the operation of the "regime" itself—the qualifications of the RSVFP "monitors," the forms and inspection reports those monitors use, and the kind of supervision and counseling those monitors provide to blind vendors. These kinds

---

[3] Plaintiffs also advance claims based on these allegations of unauthorized or excessive deductions under theories of breach of fiduciary, SAC ¶¶ 77–81, 108–12 (Counts 10 and 16), unjust enrichment, Pls.' Opp'n at 42–43 (explaining that Counts 11 and 17, SAC ¶¶ 82–86, 113–15, erroneously used the term "constructive trust" for Plaintiffs' unjust enrichment claim), and resulting trust, SAC ¶¶ 87–89, ¶¶ 116–18 (Count 12 and 18). But as with their discrimination claims, Plaintiffs cannot simply re-label claims arising out of the manner in which the DDS-RSA administers the RSVFP to avoid the Act's mandatory exhaustion requirements.

7

of questions go directly to the administration of the Act and are properly subject to its exhaustion requirements.

Alternatively, even if Counts 1 through 3 could somehow be interpreted as challenging discriminatory conduct outside the administration of the program, the Court concludes that Plaintiffs have not plausibly stated claims under the ADA, Section 504 of the Rehabilitation Act, or the DCHRA. To sustain a claim under those statutes, a plaintiff must show she was "excluded from participation in," "denied the benefits of," or "subject to discrimination" by a public entity "by reason of" her disability. 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act); Brown v. District of Columbia, No. 16-cv-0947-EGS, 2017 WL 4174417, at *2 (D.D.C. Sept. 18, 2017) (explaining that all three statutes have similar requirements for disability claims).[4]

Plaintiffs' theory regarding Counts 1 though 3 has been a moving target to say the least. In the Second Amended Complaint, they allege that they were denied the benefits and services that come from counseling by trained and licensed DOH inspectors, leading to the aforementioned "segregated regime" where sighted vendors received quality DOH inspections while blind vendors receive unauthorized, low-quality DDA-RSA inspections. SAC ¶¶ 19–21. But the District pointed out in its motion to dismiss that it is "a matter of indisputable public record [that] the RSVFP vending facilities plaintiffs operate *are* licensed and inspected by DOH." MTD at 22. In support, the District attaches to its motion copies of the most recent

---

[4] Technically, the Rehabilitation Act requires a higher showing of causation. Compare 42 U.S.C. § 12132 (discrimination under ADA must be "by reason of such disability"), with 29 U.S.C. § 794(a) (discrimination under Rehabilitation Act must be "*solely* by reason of her or his disability" (emphasis added)).

publicly available DOH inspection reports of Plaintiffs' facilities.  Id., Ex. 3, ECF No. 19-3 (available at https://dc.healthinspections.us/?a=Inspections).[5]

Plaintiffs then shifted their theory for these counts.  See Opp'n at 28–31.  In their opposition, they argue that they "labored under segregated DDS-RSA *ultra vires* inspections by inadequately trained DDS-RSA employees who used bogus inspection report forms, and this happened while the plaintiffs faced *additional* inspections from DOH" while "sighted proprietors faced inspections *solely* from DOH, which used credentialed inspectors."  Id. at 29 (emphases added).  In other words, Plaintiffs now complain that while sighted vendors only received inspections by DOH inspectors, blind vendors received two-fold inspections by both DOH inspectors *and* DDS-RSA monitors.  But Plaintiffs did not receive the additional inspections by DDS-RSA monitors by reason of their blindness; they received additional inspections because of their participation in the District's RSVFP.  For instance, the RSA implementing regulations require SLAs to "carry out full responsibility for the supervision and management of each vending facility in its program in accordance with its established rules and regulations, this part, and the terms and conditions governing the permit" and also "take adequate steps to assure that each vendor understands the provisions of the permit and any agreement under which he operates, as evidenced by his signed statements."  34 C.F.R. § 395.3(a)(11)(i) & (vi).  The challenged inspections are obviously designed to fulfill these regulatory responsibilities.

---

[5] As explained above, the Court may consider matters subject to judicial notice without converting the District's motion to dismiss into one for summary judgment.  Gustave-Schmidt, 226 F. Supp. 2d at 196.  "[M]atters in the general public record, including records and reports of administrative bodies," are subject to judicial notice.  Does I through III v. District of Columbia, 238 F. Supp. 2d 212, 216 (D.D.C. 2003) (citation omitted).  Plaintiffs do not dispute that the DOH inspection reports are reports by an administrative body and thus subject to judicial notice.

Because the challenged conduct—the inspections by both DOH and DDS-RSA—was not plausibly undertaken by reason of Plaintiffs' blindness, Counts I through III fail to state claims of discrimination under the ADA, Rehabilitation Act, or DCHRA.

Ultimately though, Plaintiffs' allusions to segregation and discriminatory intent do not change the fact that their claims turn on the administration of the RSA and fall within the broad remedial scheme established for vendors' disputes regarding "*any* action arising from the operation or administration of the vending facility program." 20 U.S.C. § 107d-1(a) (emphasis added). A rose by any other name would smell as sweet, and an RSA claim brought under any other name is still subject to the Act's mandatory exhaustion requirement.[6]

This result is consistent with other cases in which courts have rejected "the simple 'pleading trick' of adding a section 504 [of the Rehabilitation Act] claim to a complaint alleging violations of the [Randolph-Sheppard] Act" that would allow plaintiffs "to evade the exhaustion requirements specified in the Act." New York v. U.S. Postal Serv., 690 F. Supp. 1346, 1353 (S.D.N.Y. 1988). For example, in Kentucky v. United States, 62 Fed. Cl. 445 (2004), aff'd sub nom. Kentucky, Educ. Cabinet for the Blind v. United States, 424 F.3d 1222 (Fed. Cir. 2005), the Court of Federal Claims rejected the Kentucky Department for the Blind's ("KDB") argument "that its claim is not an 'RSA claim' at all" and dismissed the case for failure to exhaust. Id. at 460. Despite KDB's "styling" the complaint "as a challenge entirely within the Tucker Act's jurisdiction" regarding procurement issues, the court concluded that the challenged

---

[6] To be clear, the Court does *not* hold that a blind vendor can never bring a discrimination claim without first exhausting that claim pursuant to the Randolph-Sheppard Act. Rather, the Court only concludes that here, Plaintiffs' claims are, in substance, challenges to the District's administration of the Act and therefore must be exhausted.

"issue arose out of an alleged failure" to comply with RSA's priority scheme and thus was subject to the Act's mandatory administrative grievance procedures. Id. at 461–63.

   2. *Waiver*

Plaintiffs' second argument against dismissal is likewise unavailing. They argue that the District of Columbia "waived its right to demand that the plaintiffs exhaust remedies with an administrative action before the OAH" when it passed the D.C. Human Rights Act. Opp'n at 12–13. Under the DCHRA, an individual may either file an administrative complaint *or* a civil action in a court of competent jurisdiction. D.C. Code § 2-1403.03(b). "In essence," Plaintiffs conclude, "the defendant statutorily waived its right to an exhaustion of remedies in discrimination lawsuits." Opp'n at 13. But, as explained above, Plaintiffs have brought a discrimination lawsuit in name only; the substance of their claims arises under the DDS-RSA's administration of the RSA.

Plaintiffs try in vain to connect the two statutory regimes by claiming that the District's Mayor exercised rulemaking authority under section § 2-1403.03(a) of the District of Columbia Human Rights Act to adopt § 218 of title 29 of the D.C. municipal regulations, which implements the RSA's administrative hearing requirements. But those regulations do not cross reference the DCHRA and in fact, the notice of final rulemaking states explicitly that the regulation was adopted pursuant to the authority set forth in section 109 of the Department on Disability Services Establishment Act of 2006, D.C. Code § 7-761.09 and Mayor's Order 2007-68 (which delegates rulemaking authority to the Department on Disability Services). See 61 D.C. Reg. 8741 (Aug. 22, 2014).

*3. Jurisdiction*

Third, and finally, Plaintiffs argue that even if they have asserted claims under the Randolph-Sheppard Act, the Court should not dismiss for failure to exhaust because the Office of Administrative Hearings lacks jurisdiction over claims arising under the Act. Pls.' First "Praecipe," ECF No. 28, at 1.[7] This is wrong. The subject matter jurisdiction of OAH extends to "all cases to which [the OAH Establishment Act of 2001] applies." D.C. Code § 2-1831.02(a). Although the Establishment Act does not specifically reference the Randolph-Shepperd Act, OAH still has jurisdiction over cases arising under the RSA. Section 2-1813.03 enumerates the types of cases over which the OAH has jurisdiction, including cases arising under the jurisdiction of the Department of Human Services, D.C. Code § 2-1831.03(a)(2), which historically administered the District's RSVFP, D.C. Resp. to Pls.' First Praecipe, ECF No. 29, Ex. 1, 35 D.C. Reg. 8538 (Dec. 9, 1988). In 2006, the District passed legislation that transferred authority over the Rehabilitative Services Administration, which administers the RSVFP, from DHS to the Department of Disability Services. D.C. Code § 7-761.08(b). At the time, though, OAH understood that it would "continue conducting hearings regarding the RSA program, and OAH's Chief Administrative Law Judge approved this request under D.C. Code § 2-1831.03(c)," M. F-G v. D.C. Dep't on Disability Servs., Rehab. Servs. Admin., No. DS-P-08-102477, 2009 WL 2491330, at *n.3 (D.C. OAH July 7, 2009). That code section provides for jurisdiction over agency decisions "not referenced in this section" through approval by the Chief Administrative

---

[7] Although Plaintiffs moved for leave to file a surreply—which they styled as a "rejoinder"—they did not seek the Court's permission to file their first and second "Praecipes," which the Court takes as additional supplemental responses. Out of an abundance of caution, however, the Court has considered the arguments advanced in those three responses. Counsel is admonished to adhere to the Court's rules in the future.

Law Judge. Therefore, although the OAH Establishment Act of 2001 does not specifically list DDS-RSA or RSVFP cases, those cases are still within OAH's jurisdiction.

## IV. Conclusion

In conclusion, because Plaintiffs' claims are premised on alleged violations of the Randolph-Sheppard Act and the manner in which the District administers that Act, they fall within the scope of the mandatory administrative requirements of the Act. Because Plaintiffs failed to exhaust their claims, the Court will grant the District of Columbia's motion to dismiss. An Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER  
United States District Judge

Date: March 22, 2019